UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        CRIMINAL NO. 21-20208

v.        HON. DAVID M. LAWSON

MICHAEL RYMAR,

        Defendant.

_____/

**GOVERNMENT'S MOTION FOR DOWNWARD DEPARTURE**

Michael Rymar committed a serious fraud on the Postal Service. But he eventually accepted responsibility for his criminal behavior. And he was always willing to cooperate against others. Importantly, this cooperation led to the conviction of a USPS employee who Rymar was bribing. A downward departure is therefore warranted. The government recommends a 10-month or 33% departure from Rymar's 30-37 month guideline range.

1

## **USPS OIG uncovers Rymar's fraud**

As explained in more detail in its sentencing memorandum, the government learned that Rymar fraudulently obtained over $1 million from the United States Postal Service ("USPS").

The scheme was straight-forward. Rymar was awarded no-bid contracts for construction work at USPS facilities throughout the Midwest. He then submitted false paperwork, e.g., claiming that his employees worked on a job they didn't or he paid a subcontractor much more than he actually did.

Agents searched Rymar's house looking for evidence of this crime. Rymar was home at the time and talked to agents. Although he admitted he falsified documents, he wasn't entirely truthful. For example, he said that he did not submit paperwork to the USPS that claimed his employees worked on a project when they didn't do the work. (Exhibit 1 – USPS Report, 6/27/18).

Rymar said that he wanted to work with the agents, but preferred to wait and talk with his attorney. (*Id.*).

2

## Rymar talks with the government

An initial proffer interview occurred about six months later. (Exhibit 2 – USPS Report, 12/19/18). Rymar happily identified others he knew or thought were involved in criminal behavior. But he had a more difficult time with his own culpability. For instance, he was asked about the Painted Post, New York job that was detailed in the government's sentencing memorandum. Rymar acknowledged the paperwork he submitted was inaccurate. (*Id.*, p.2-4). But he tried to explain that his profit margin was much lower than the 41% he wrote down in his own notes. Rymar claimed this profit percentage didn't account for extra hours of his own work. (*Id.*, p.4, 6). (Rymar didn't provide any rational explanation why his own personal documentation would identify an inaccurate profit percentage, and why he wouldn't have accounted for the extra work.)

So the group met again and government counsel explained in detail the process in creating the loss amount, which used Rymar's own calculations and documentation. But Rymar was unwilling to accept the

3

loss amount was accurate, again claiming that his own paperwork didn't fully account for his expenses.

The parties appeared to reach an impasse. So the government sought an indictment. (ECF No.1, PageID.1).

Eventually though, Rymar agreed to plead guilty and accept responsibility for the total loss amount. He also agreed to cooperate against others, including Thomas Berlucchi. Rymar explained that he provided things to Berlucchi, including hotel stays and construction work. In return, Berlucchi kept awarding him with USPS jobs.

Rymar provided testimony to the grand jury in anticipation of the government seeking an indictment against Berlucchi. But this became unnecessary. The government provided Rymar's interview statements and transcript to Berlucchi's attorney, also explaining that Rymar was willing to testify at trial. Given the evidence gathered (including from Rymar's cooperation), the government and Berlucchi reached a resolution which involved Berlucchi's agreement to plead guilty. (E.D. Mich. No. 22-cr-20093, ECF No. 14, PageID.23).

## A substantial assistance reduction is appropriate

Under § 5K1.1, courts analyze a defendant's assistance to government investigations by looking at (1) the usefulness to the government, (2) the truthfulness, completeness, and reliability of the defendant, (3) the "nature and extent" of the assistance, (4) any injury or risk of injury, and (5) the timeliness. USSG § 5K1.1(a)(1)-(5). The analysis is, like sentencing generally, done "on an individual basis." *Id.*, Application Note Background. Accordingly, "[l]atitute is . . . afforded to the sentencing judge." *Id.*

Rymar's information provided to the government, testimony to the grand jury, and willingness to testify at trial provided substantial assistance to the government's prosecution of Berlucchi. In fact, Rymar's cooperation was integral to obtaining Berlucchi's conviction. Given the consideration of the substantial assistance factors, the government believes that a one-third reduction from the bottom of Rymar's guideline range (that is, a 10-month reduction) is appropriate.

## **Conclusion**

The Court should impose a 20-month custodial sentence.

                                            Respectfully submitted,

                                            DAWN N. ISON
                                            United States Attorney

                                            <u>s/Steven P. Cares</u>
                                            Assistant United States Attorney
                                            211 West Fort Street, Suite 2001
                                            Detroit, Michigan 48226
                                            (313) 226-9139
                                            steven.cares@usdoj.gov

## **CERTIFICATION OF SERVICE**

I hereby certify that on **August 3, 2022**, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

s/Steven P. Cares (P68503)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan  48226
Phone:  (313) 226-9139
E-mail: steven.cares@usdoj.gov
